**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHELLE GREGORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-02152-AGF |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Michelle Gregory is not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  For the reasons set forth below, the decision of the Commissioner will be affirmed.

**BACKGROUND**

The Court adopts the facts set forth in Plaintiff's statement of facts (ECF No. 15) and Defendant's response with additional facts (ECF No. 19-2).  Together, these statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff was born on April 21, 1972 and completed high school in 1990.  Between 2004 and 2016, she held jobs as a security guard, an operating manager for a landscaping company, and a branch and account manager for a loan agency.  Tr. 190.  On January 9,

2017, Plaintiff filed an application for disability insurance benefits alleging a disability

beginning September 28, 2016.  Her application was denied at the administrative level,

and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").  On

October 4, 2018, the ALJ heard testimony from Plaintiff, who was represented by

counsel, and from Ms. Deborah Determan, a vocational expert ("VE").  By decision

dated December 21, 2018, the ALJ found that Plaintiff had the residual functional

capacity ("RFC") to perform light work as defined by the Commissioner's regulations,

except for the following limitations:

> [She] should only occasionally climb ramps and stairs; never climb ladders,
> ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; never be
> exposed to unprotected heights or hazardous machinery; never have
> concentrated exposure to extreme temperatures; and limited to simple,
> routine tasks, with only occasional interaction with supervisors and
> coworkers, occasional interaction with the general public, and few changes
> in work setting.

Tr. 27.

The ALJ next found that Plaintiff could perform certain light unskilled jobs listed

in the Dictionary of Occupational Titles ("DOT") (e.g., merchandise marker, routing

clerk, photocopy machine operator), which the VE had testified that a hypothetical person

with Plaintiff's RFC and vocational factors (age, education, work experience) could

perform and that were available in significant numbers in the national economy.

Accordingly, the ALJ found that Plaintiff was not disabled under the Act.  On June 19,

2019, the Appeals Council denied Plaintiff's request for review.  Thus, Plaintiff has

exhausted her administrative remedies, and the ALJ's decision is the final decision of the

Commissioner for this Court's review.

2

Plaintiff contends that the ALJ failed to properly (1) evaluate her RFC and (2) weigh the evidence concerning her mental impairments.  Plaintiff asks the Court to reverse and remand the decision for an award of benefits or further evaluation.  The Commissioner maintains that the record contains substantial evidence to support the ALJ's decision.

**The ALJ's Decision (Tr. 22-33)**

The ALJ found that Plaintiff has the following severe impairments: post-traumatic stress disorder, major depressive disorder, general anxiety disorder, bipolar disorder, obesity, degenerative disc disease, and a history of left kidney nephrectomy.[1]  Tr. 24. However, the ALJ found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the Commissioner's regulations. Plaintiff does not challenge the ALJ's findings with respect to her physical conditions. With respect to Plaintiff's mental impairments centrally at issue here, the ALJ determined that those impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive compulsive disorders), and 12.15 (trauma- and stressor-related disorders).  These conditions are not deemed disabling unless functional limitations known as "paragraph B criteria" are present, meaning a claimant has one extreme or two marked functional limitations in her ability to: (1) understand, remember, or apply

---

[1]      The ALJ also noted several alleged impairments that were either non-severe or not medically determinable from the evidence: obstructive sleep apnea, gastroesophageal reflux disease, irritable bowel syndrome, hyperlipidemia, migraine headaches, asthma, fibromyalgia, and carpal tunnel syndrome.  Tr. 24-25.

information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).[2]

In applying "paragraph B" criteria here, the ALJ found that Plaintiff had only: (1) a mild limitation in understanding, remembering, or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation in concentrating, persisting, and maintaining pace; and (4) a moderate limitation in adapting and managing herself.  Tr. 26-27.  In arriving at these findings, the ALJ reasoned as follows.  First, although Plaintiff claimed some difficulty remembering, following instructions, and completing tasks, the medical evidence and her testimony demonstrated that she was able to provide her medical information, describe her previous work history, follow medical directives, prepare meals, shop online, and play games.  Second, although Plaintiff claimed difficulty in socializing, the evidence demonstrated that she was cooperative and calm when interacting with her providers and interacted appropriately with authority.  Third, though Plaintiff claimed difficulty concentrating, the evidence demonstrated that she could use the internet, manage her medical treatment, prepare meals, watch television, and play games; and medical records did not reflect any testing to assess attention and concentration.  Fourth, though Plaintiff claimed difficulty handling stress,

---

[2]     These criteria became effective on January 17, 2017 and apply to claims that were pending at that time.  *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66,137, 66,138. (Sept. 26, 2016).  Plaintiff filed her application on January 9, 2017.

managing her personal care, and regulating her mood, her medical records reflected good hygiene and improvements in mood and affect.  Thus, the ALJ concluded that paragraph B criteria were not satisfied.

When paragraph B criteria are not satisfied, the relevant listings also have additional functional criteria known as "paragraph C criteria," used to evaluate "serious and persistent" mental disorders.  Paragraph C criteria require a medically documented history of the existence of the disorder for at least two years, with evidence of (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the claimant's disorder and (2) marginal adjustment, meaning a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life.  Here, the ALJ observed that the evidence failed to establish the presence of paragraph C criteria.

After careful consideration of the entire record, the ALJ found that Plaintiff has the RFC to perform light work, with the limitations described above.  In determining Plaintiff's RFC and limitations, the ALJ summarized the following evidence as pertinent to Plaintiff's mental impairments.

Plaintiff's self-reporting and testimony reflects that she stopped working in late September 2016 due to trauma over the death of her son.  She has difficulty concentrating, is easily distracted, and has no short-term memory.  She forgets to eat, cook, bathe, or care for herself.  She forgets where she is going.  She has to set reminders to take her medications and feed the dog.  She has trouble sleeping.  She has difficulty getting out of bed.  She has panic attacks.

The ALJ found that Plaintiff's medically determinable impairments could reasonably expected to cause her alleged symptoms but that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence in the record.

Specifically, the ALJ noted that Plaintiff underwent counseling in the months after her son's death.  (Referring to treatment records from Mark Hunyar, MSW, LCSW, at Tr. 352-396.)  She was diagnosed with moderate bipolar disorder and PTSD.  She initially presented disheveled and depressed but improved over time with counseling and medications.  Her affect improved from constricted to appropriate, and her cognitive function improved from disorganized and preoccupied to oriented and alert.  Throughout treatment, she remained interactive and functionally intact, with normal markers for judgment and insight, memory, thought content, and motor activity.  In addition to psychotherapy, the ALJ noted that Plaintiff was prescribed antipsychotic, antidepressant, and antianxiety medications.

Additionally, the ALJ reviewed treatment records from Plaintiff's treating psychiatrist, Dr. Ahmad Ardekani, for the period from April 2017 through August 2018. The ALJ noted that Plaintiff was diagnosed with, and prescribed medications for, recurrent, moderate major depressive disorder, panic disorder, PTSD, and generalized anxiety disorder.  However, Plaintiff consistently reported good mood; no anxiety or panic attacks; good sleep, appetite, and energy; focused attention and concentration; and no hallucinations, paranoia, or suicidal thoughts.  Additionally, she had a calm demeanor, good eye contact, and cohesive thought.  Though the ALJ acknowledged that Plaintiff

occasionally reported nightmares, anxiety,[3] panic attacks or paranoia, and decompensation when off her medication, the ALJ concluded that the treatment records overall showed improvement over time with adjustments in medication.  Tr. 30.

The ALJ also reviewed a psychological evaluation conducted by Dr. Kimberly Buffkins, reflecting that Plaintiff was depressed with flat affect but was cooperative and calm, made good eye contact, had normal thought process and content, and exhibited normal grooming and hygiene.  Tr. 297.  Dr. Buffkins opined that Plaintiff had a moderate limitation in understanding, remembering, and applying information; a mild limitation in social interaction; a moderate limitation in her ability to focus and remain on task; and a mild limitation in regulating her emotions and controlling behavior.  The ALJ gave Dr. Buffkins's opinion partial weight, reasoning that the record as a whole supported only a mild (rather than moderate) limitation in Plaintiff's ability to understand, remember, and apply information.

Additionally, the ALJ reviewed the opinion of state agency psychologist Dr. Martin Isenberg, who reviewed Plaintiff's medical records in May 2017 and concluded that Plaintiff had a mild limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentration, persistence, and pace; and a moderate limitation in adapting and managing

---

[3]     The ALJ's first observation noting *no* anxiety or panic attacks is consistent with the subjective sections of each consultation record.  Tr. 327-351.  The ALJ's subsequent acknowledgement of occasional panic and anxiety corresponds with the treatment plan sections from two visits, as an explanation for adjusting Plaintiff's medication.  Tr. 334, 349.

herself.  Tr. 62.  The ALJ found Dr. Isenberg's opinion consistent with the overall record and gave it opinion great weight.  Tr. 30.

Finally, the ALJ reviewed a medical source statement ("MSS") submitted by Plaintiff's treating psychiatrist, Dr. Ardekani, in August 2018.  Tr. 318-326.   As discussed further below, Plaintiff disputes the ALJ's interpretation of Dr. Ardekani's check markings on the MSS form.  According to the ALJ's written decision, Dr. Ardekani, like Dr. Isenberg, opined that Plaintiff had mild limitations in understanding, remembering, and applying information and moderate limitations in the other three categories.  Tr. 30.  The ALJ gave great weight to this portion of Dr. Ardekani's opinion as it was consistent with the record as a whole.  However, the ALJ gave no weight to the doctor's further opinions suggesting that Plaintiff was unable to work, because those opinions were internally inconsistent with his functional limitation opinions and also inconsistent with his other treatment records (reflecting mostly normal markers) and the greater record as a whole.  Tr. 30.  Similarly, the ALJ gave no weight to Dr. Ardekani's opinion assigning Plaintiff a global assessment of functioning of 40 (indicating a major impairment in mood, judgment, thinking, or social interaction), reasoning that GAF scores are generally of little value in assessing the severity and limiting effects of a claimant's mental impairments.  Tr. 31.

Based on the foregoing, the ALJ ultimately concluded that an RFC of light work, with the restrictions previously described, was consistent with the evidence.  The ALJ then referred to the VE's testimony that, given Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to perform occupations such as

merchandise marker, routing clerk, and photocopy machine operator, of which there are significant numbers in the national economy.  Tr. 32.  Accordingly, the ALJ found that Plaintiff is not disabled under the Act.

In her brief before this Court, Plaintiff argues that (1) the ALJ erred by failing to include moderate limitations in concentration, persistence, and pace, in determining Plaintiff's RFC and (2) the ALJ misread Dr. Ardenanki's MSS ratings downward and therefore did not give adequate weight to his opinion.  In response, the Commissioner maintains that (1) the ALJ's RFC determination did include sufficient restrictions to accommodate Plaintiff's moderate limitations and (2) even if the ALJ did misread Dr. Ardekani's ratings, the error was harmless in that an alternate reading is even more contrary to the overall record and thus would not have affected the outcome.

## DISCUSSION

### Statutory Framework

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability

9

to do basic work activities.  20 C.F.R. § 404.1520(c).  A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden.  *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.  *Johnson v. Astrue*, 628 F.3d 991, 992 (8th

Cir. 2011).  The court "may not reverse merely because substantial evidence would support a contrary outcome.  Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*  The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration."  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**RFC Determination**

In her first point, Plaintiff asserts that the ALJ erred by failing to account for a moderate limitation in concentration, persistence, and pace (the third category of paragraph B criteria) when determining Plaintiff's RFC.  The Commissioner counters that the restriction to "simple, routine tasks" sufficiently accommodates Plaintiff's impairment in this category.[4]  As relevant to this issue, the record reflects that the

---

[4]      The Commissioner also relies on the restriction "with only few changes in work setting" at the end of the RFC paragraph.  But this restriction, both sequentially in the

hypothetical posed to the VE described a person of Plaintiff's age, education, and work history; able to perform light work, with certain physical limitations not in dispute here; *limited to simple, routine tasks*; with only occasional interactions with supervisors and co-workers and the public; with only few changes in work setting.  Tr. 54.  In response to this hypothetical, the VE testified that the person would be precluded from performing Plaintiff's past work but would be able to work in certain light, unskilled jobs such as merchandise marker, routing clerk, and photocopy machine operator.  Tr. 54-55.  Upon further questioning, the VE testified that being off-task 15% of the time or being absent three days per month would preclude employment.  Tr. 55.

In support of Plaintiff's position that this record is insufficient to support her RFC, Plaintiff relies on *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996).  In that case, the ALJ posed two hypotheticals containing a restriction to "simple jobs," differentiated only by the claimant's ability to stay sober, but not otherwise accommodating the claimant's moderate limitations in concentration.  In response to the hypothetical *including* a drinking problem, the VE testified that a person's deficiencies with respect to basic work habits (e.g., reporting for work) would cause problems on an ongoing daily basis regardless of the job requirements.  *Id.* at 691, 695.  However, the ALJ relied on the alternative, sobriety hypothetical to find that the claimant was not disabled.  On appeal,

---

paragraph as well as logically in the context, more readily corresponds to Plaintiff's limitation in adaptability (the fourth category of paragraph B).  The Court is not persuaded that this restriction was intended to accommodate Plaintiff's concentration (the second category) and does not find it necessary to the analysis.

the Eighth Circuit held that the claimant's deficiencies in concentration should have been specified in the hypothetical, absent which the VE's testimony did not constitute sufficient evidence to support the Commissioner's decision. *Id*. at 695.

Similarly, Plaintiff relies on *Demoreuille v. Colvin*, where the court concluded that a hypothetical describing work "limited to simple, routine, and repetitive tasks" did not adequately capture the nature of the claimant's moderate limitations in concentration, persistence, and pace. 15-0528-CV-W-ODS-SSA, 2016 WL 4129117, at *2, *5 (W.D. Mo. Aug. 3, 2016). Based on the foregoing, Plaintiff asserts that the ALJ committed reversible error by failing to articulate more specific restrictions to address Plaintiff's moderate limitations in concentration, persistence, and pace, in determining Plaintiff's RFC. Plaintiff further suggests that the ALJ's decision is not supported by substantial evidence insofar as the VE's testimony was based on an incomplete hypothetical.

In response, the Commissioner relies on *Howard v. Massanari*, 255 F.3d 577 (8th Cir. 2001), and *Chismarich v. Berryhill*, 888 F.3d 978 (8th Cir. 2018). In *Howard*, the ALJ's hypothetical provided for simple, routine, repetitive work, without further detail. The Eighth Circuit deemed this sufficient to account for the claimant's deficiencies in concentration, persistence, or pace. 255 F.3d at 582 (involving a claimant with questionable literacy and borderline intellectual functioning). In *Chismarich*, the Eighth Circuit deemed an RFC prescribing "work at a normal pace without production quotas" sufficient to account for the claimant's moderate limitations in concentration, persistence, and pace. 888 F.3d at 980 (involving impairments from bipolar disorder, addiction, learning disabilities, and ADHD).

13

The Court finds additional guidance in a recent, squarely on-point ruling from this Court (J. Limbaugh, Jr.) in *Gonzalez v. Saul*, 4:19-CV-01429-SNLJ, 2020 WL 1873410 (E.D. Mo. April 15, 2020).  There, as here, the claimant suffered from depression and anxiety causing moderate limitations in concentration, persistence, and pace.  The ALJ arrived at an RFC prescribing light work restricted to "simple and routine tasks throughout the workday."  *Id*. at *2.  Relying on *Newton*, the claimant argued that this RFC failed to adequately capture her limitations in concentration, persistence, and pace. The Court disagreed, reasoning that *Newton*'s holding was limited to the narrow issue of that claimant's habit-based problems (due to his alcoholism) as opposed to skills-based problems.  *Id*. at *3.  The court further reasoned that "cases since *Newton* demonstrate its limited reach."  *Id*. at *4 (discussing *Howard*, 255 F.3d at 582 (cited above), and *Scott v. Berryhill*, 855 F.3d 853, 858 (8th Cir. 2017) (upholding an RFC limiting the complexity of tasks to "those that can be learned and performed by rote" as adequately accommodating the claimant's limited concentration)).  Also in *Gonzalez*, as here, the ALJ questioned the VE about a person's ability to stay on task and maintain attendance, which the VE responded would affect the person's ability to maintain employment. There, as here, the ALJ declined to incorporate those additional limitations into the RFC in light of the overall record.  *Id*. at *4.

Indeed, district courts in Missouri have consistently concluded that an RFC restriction of "simple and routine" tasks adequately accounts for a claimant's moderate limitations in concentration, persistence, and pace.  *See, e.g., Salkic v. Saul*, 4:18CV1901 HEA, 2020 WL 805868, at *3 (E.D. Mo. Feb. 18, 2020) (collecting cases from the past

14

five years).  Plaintiff's argument to the contrary is unavailing.

**Weight of the Evidence**

Next, Plaintiff asserts that the ALJ failed to give adequate weight to the treating

source opinion offered by her psychiatrist, Dr. Ardekani, and that, as a result, the ALJ's

decision is not supported by substantial evidence.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must

be supported by some medical evidence of the claimant's ability to function in the

workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  However, "there is no

requirement that an RFC finding be supported by a specific medical opinion." *Id.*  The

ALJ is not required to accept every opinion by an examiner but must weigh all the

evidence in the record. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).  "It is the

ALJ's function to resolve conflicts among the opinions of various treating and examining

physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012).

Under the applicable regulation,[5] the opinion of a treating physician is "normally

---

[5]    For claims filed before March 27, 2017, which includes Plaintiff's, the regulations
provide that if "a treating source's medical opinion on the issue(s) of the nature and
severity of your impairment(s) is well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with the other substantial
evidence in your case record, [the Social Security Administration] will give it controlling
weight," and further provide that the Administration "will give good reasons in our notice
of determination or decision for the weight we give your treating source's medical
opinion." 20 C.F.R. § 404.1527.

For claims filed on or after March 27, 2017, the regulations have been amended to
eliminate the treating physician rule.  The new regulations provide that the Social
Security Administration "will not defer or give any specific evidentiary weight, including
controlling weight, to any medical opinion(s) or prior administrative medical finding(s),
including those from your medical sources," but rather, the Administration will consider

entitled to great weight." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018).

"However, the Commissioner may discount or even disregard the opinion of a treating

physician where other medical assessments are supported by better or more thorough

medical evidence," and the Commissioner "may also assign little weight to a treating

physician's opinion when it is either internally inconsistent or conclusory." *Id.*

Centrally, Plaintiff signals – and the Commissioner concedes – that the ALJ

misread the levels of degree of impairment check-marked in the section of Dr. Ardekani's

MSS addressing paragraph B criteria.  To wit, Dr. Ardekani indicated a *moderate*

impairment in the first category (understanding, remembering, or applying information)

and *marked* impairments in the remaining three categories (social interaction;

concentration, persistence, and pace; and adapting or managing oneself).  However, the

ALJ read the marks as though shifted one column to the left, thus downgrading to only a

*mild* impairment in the first category and *moderate* impairments in the remaining

categories.  The ALJ gave great weight to this section of Dr. Ardekani's opinion (her

misreading of it) because she understood it to be consistent with Dr. Isenberg's opinion

and the record as a whole.  Tr. 30.  Plaintiff argues that the ALJ's misreading of the

paragraph B section of Dr. Ardekani's opinion changed the outcome of the case and

therefore must be reversed.

In response, the Commissioner maintains that the error was harmless and clearly

did not affect the outcome, given the totality of the record.  The Commissioner notes that

---

all medical opinions according to several enumerated factors, the "most important" being
supportability and consistency.  20 C.F.R. § 404.1520c.

the ALJ gave no weight to other portions of the opinion indicating that Plaintiff was unable to work and had no ability to function, because those opinions were inconsistent with the record, including Dr. Ardekani's own treatment notes showing normal markers. The Commissioner submits that the ALJ gave weight to her own misreading of Dr. Ardekani's paragraph B opinion only because mild and moderate degrees of limitation aligned with the overall record. In other words, the ALJ's overall findings, based on multiple sources of evidence in the record, demonstrate that she would have rejected Dr. Ardekani's *actual* paragraph B opinions indicating higher degrees of impairments. The Court agrees with the Commissioner's position.

To show that an error was not harmless, a claimant must provide some indication that the ALJ would have decided differently but for the error. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (reasoning that application of the correct gridlines would not have resulted in an award of benefits). *See also*, *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007) (deeming the AJL's misreading of a non-treating examiner's opinion "without consequence"); *Reed v. Saul*, 2:18-CV-00066-NCC, 2019 WL 4576320, at *6 (E.D. Mo. Sept. 20, 2019) (finding harmless error where ALJ mischaracterized the VE's testimony about the claimant's last job); and *Suter v. Berryhill*, 4:16-CV-00457-NKL, 2017 WL 1476156, at *14 (W.D. Mo. Apr. 25, 2017) (finding harmless error where ALJ relied on erroneous testimony by a VE).

In *Casey*, the ALJ misread the doctor's opinion as to the claimant's ability to work. The Eighth Circuit deemed the error harmless because the ALJ correctly read the opinion as to the claimant's functional limitations, and the overall record supported the

decision.  Synthesizing 20 C.F.R. § 404.1527, the Circuit Court noted that "the value of a medical source's opinion is found in judgments about the nature and severity of a claimant's impairments; a medical source's conclusions that a claimant is disabled or unable to work are not given any special significance because such dispositive findings are reserved to the ALJ."  *Casey*, 503 F.3d at 695 (citing 20 C.F.R. § 404.1527(a)(2) and (e)(1) and (3)).

To be sure, the case at bar presents the opposite scenario, as the ALJ misread Dr. Ardekani's opinion of Plaintiff's functional impairments.  While the Court acknowledges that this is a valuable section of the opinion, the Court still does not believe that the ALJ's misreading affected her ultimate decision, because the ALJ gave no weight whatsoever to other sections of the opinion suggesting such severe limitations, reasoning that those opinions were inconsistent with Dr. Ardekani's own treatment notes and other evidence in the record.  Established precedent applying § 404.1527 accords weight to a treating source opinion *only* when the opinion is consistent with the record as a whole. *Thomas*, 881 F.3d at 675.  Such is not the case here, as Dr. Ardekani's opinion signaling marked limitations in three paragraph B categories is not borne out by the record.  As previously noted, Dr. Isenberg found only a mild limitation in the first paragraph B criterion and only moderate limitations in the other three. [6]  Tr. 62.  Dr. Buffkins found only mild limitations in the second and fourth criteria and only moderate limitations in the first and third.  Tr. 300-301.  Dr. Ardekani's own treatment notes reflect normal

---

[6]      In fact, Plaintiff directly relies on Dr. Isenberg's opinion to support her first point of error here.  ECF No. 14 at p. 5.

18

markers throughout the treatment period (e.g., no anxiety or panic attacks, focused attention and concentration, no paranoia, calm demeanor, good eye contact, cohesive thought) and improvements with medication. Tr. 327-351.  These elements of the record directly contradict Dr. Ardekani's opinion indicating marked degrees of limitations.

In support of her claim that she does have marked limitations, Plaintiff highlights Mr. Hunyar's notes from counseling sessions following her son's death (October 2016 to February 2017) as well as Dr. Ardekani's notes documenting her diagnoses and various medications (August 2017 to July 2018).[7]  But, under this Court's standard of review, the Court defers heavily to the agency's findings and conclusions and will uphold the denial of benefits if the ALJ's decision is supported by substantial evidence in the record as a whole.  *Wright*, 789 F.3d at 852.  Substantial evidence is less than a preponderance but enough that a reasonable mind might accept it as adequate to support a decision.  *Id.*  While this Court must take into account "evidence that both supports and detracts from the ALJ's decision, … as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently."  *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015).

Mindful of these principles, the Court finds substantial evidence in the record to

---

[7]     Plaintiff also refers to Dr. Gahn's records of her treatment for low back pain.  But these records do not inform the Court's analysis, as Plaintiff does not challenge the ALJ's determination that she is not disabled by physical impairments.

support the ALJ's determination.  For example, as stated above, Dr. Isenberg found only a mild limitation in the first paragraph B criterion and only moderate limitations in the other three (Tr. 62), while Dr. Buffkins found only mild limitations in the second and fourth criteria and only moderate limitations in the first and third (Tr. 300-301).  Dr. Ardekani's treatment notes reflect normal concentration and cohesive thought.  Tr. 327-351.  Mr. Hunyar's therapy notes reflect progress over time, with Plaintiff's cognitive functioning improving from "disorganized and preoccupied" to "oriented and alert," her affect improving from "constricted" to "appropriate," and her mood improving from "depressed" to "euthymic."  Throughout treatment, she remained interactive and functionally intact, with normal markers for judgment and insight, memory, thought content, and motor activity.  Tr. 352-397.  Given this evidence, the Court cannot say that the ALJ's misreading of Dr. Ardekani's paragraph B opinions affected the outcome, or that a correct reading of those opinions might have tipped the weight of evidence in Plaintiff's favor.  The ALJ's full decision leaves no room for such speculation.  The Court finds substantial evidence in the record supporting the ALJ's ultimate determination that Plaintiff is not disabled under the Act.

## CONCLUSION

In sum, ample precedent confirms that the ALJ adequately accommodated Plaintiff's moderate limitations in concentration, persistence, and pace with an RCF restriction to simple, routine tasks.  The ALJ did not err in relying on the VE's opinion using this restriction.  Further, the ALJ's misreading of Dr. Ardekani's opinion on Plaintiff's functional limitations was harmless error because it could not have changed

the outcome here.  The ALJ gave no weight to Dr. Ardekani's other opinions suggesting higher degrees of impairment, and the record as a whole firmly supports the ALJ's finding of lower degrees.

When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision.  *Chaney*, 812 F.3d at 676.  On the present record, the Court concludes that the ALJ's decision was within the available zone of choice.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.  A separate Judgment shall accompany this Memorandum and Order.


AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of November 2020.